## SEELYVILLE COAL & MINING COMPANY *v.* McGLOSSON.

[No. 20,758. Filed May 29, 1906.]

1. CONSTITUTIONAL LAW.—*Statutes.—Laborers.—Wages.—Semimonthly Payment.—Bill of Rights.*—The act of 1887 (Acts 1887, p. 13, §§1, 4, §§7065, 7068 Burns 1901), providing for the bi-weekly payment of employes in money and in default thereof after demand made subjecting employers to the payment of damages and necessary attorneys' fees for collecting same, is not in conflict with the bill of rights (Art. 1, §23), providing that no law shall "grant to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." *Republic Iron & Steel Co.* v. *State,* 160 Ind. 379, distinguished. p. 565.

2. STATUTES.—*Laborers.—Semimonthly Wages.—Option.*—Under the act of 1887 (Acts 1887, p. 13, §§1, 4, §§7065, 7068 Burns 1901) it is optional with the employe to demand the semimonthly payment of his wages. p. 567.

3. CONSTITUTIONAL LAW. — *Statutes.—Laborers.—Wages.—Payment.—Failure.—Penalties.*—The act of 1887 (Acts 1887, p. 13, §4, §7068 Burns 1901), providing for the collection of a penalty from employers who, after demand, fail to pay wages semimonthly, is constitutional. p. 568.

4. SAME. — *Statutes.—Laborers.—Wages.—Payment.—Failure.—Attorneys' Fees.*—The act of 1887 (Acts 1887, p. 13, §4, §7068 Burns 1901), providing for the collection of attorneys' fees from the employer in case of default of such employer in the payment of his laborers' wages semimonthly, is constitutional. p. 570.

From Vermillion Circuit Court; *A. F. White,* Judge.

Action by Jacob W. McGlosson against the Seelyville Coal & Mining Company. From a judgment for plaintiff,

defendant appeals.  Transferred from the Appellate Court under §1337m Burns 1901, Acts 1901, p. 565, §13.  *Affirmed.*

*T. W. Harper, Frank A. Kelley* and *Charles W. Ward,* for appellant.

*William Tichenor* and *G. G. Rheuby,* for appellee.

JORDAN, C. J.—This cause was originally appealed to the Appellate Court, but was transferred to the Supreme Court on the ground that the constitutionality of a statute was involved.

The action was commenced in the Superior Court of Vigo County, and on change of venue was tried in the Vermillion Circuit Court.  The suit is based upon sections one and four of an act of the legislature approved February 14, 1887 (Acts 1887, p. 13, §§7065, 7068 Burns 1901).  The act is entitled: "An act requiring corporations, companies, associations, firms and persons engaged in mining or manufacturing, in this State, to pay their employes semimonthly, in lawful money of the United States; prohibiting the issue or circulation of scrip; regulating the sale of merchandise and supplies by employer to employe, and providing penalties for violation."

The first section is as follows: "That every corporation, association, company, firm or person engaged, in this State, in mining coal, ore or other mineral, or quarrying stone, or in manufacturing iron, steel, lumber, staves, heading barrels, brick, tile machinery, agricultural or mechanical implements, or any article of merchandise, shall pay each employe of such corporation, company, association, firm or person, if demanded, at least once every two weeks, the amount due such employe for labor, and such payment shall be in lawful money of the United States, and any contract to the contrary shall be void."

Section four provides that "every corporation, company, association, firm or person who shall fail for ten days after

demand of payment has ·been made to pay employes for their labor, in conformity with the provisions of this act, shall be liable to such employe for the full value of his labor, to which shall be added a penalty of $1 for each succeeding day, not exceeding double the amount of wages due, and a reasonable attorney's fee, to be recovered in a civil action and collectible without relief."

The complaint is in three paragraphs. The first alleges that the defendant is a corporation engaged in the business of mining coal in Vigo county, State of Indiana; that on December 11, 1901, said defendant became and was indebted to plaintiff in the sum of $24.41 for labor as a coal miner, performed by plaintiff for defendant at its special instance and request; that said sum became and was due and payable by the defendant to plaintiff on said December 11, 1901, at which time plaintiff demanded the same from defendant, whereupon it refused and still refuses and neglects to pay to him said $24.41, and the same is now due and wholly unpaid; that there is accrued on said claim of $24.41 as a penalty the sum of $48.82; that it has been necessary for plaintiff to employ an attorney in collecting said claim, and that a reasonable attorney's fee for said attorney's services is $25. Wherefore plaintiff demands judgment, etc.

The second paragraph, in like manner as the first, alleges that on December 24, 1901, wages had accrued and become due the plaintiff from defendant in the sum of $16.66. The third paragraph alleges that on January 13, 1902, defendant became indebted to plaintiff for wages in the sum of $17.92. Judgment is demanded in each of the paragraphs for the amount therein alleged to be due, including penalties and attorney's fees.

The defendant unsuccessfully moved that the court strike out all that part of each paragraph of the complaint relating to damages, penalties and attorney's fees. A demurrer

to each was overruled, to which defendant duly excepted. The answer was a general denial. Upon the issues joined there was a trial by the court and a special finding of facts upon which the court stated its conclusion of law. The facts found by the court are in substance as follows: Appellant, Seelyville Coal & Mining Company, is and was a corporation under the laws of the State of Indiana during the years 1901 and 1902. Appellee herein was employed by said appellant during said year 1901 and the first part of the year 1902, as a laborer for the purpose of mining coal for appellant during said time.

On December 10, 1901, appellant became and was indebted to appellee in the sum of $24.41 for wages in mining coal. Appellant had adopted the 10th and 25th days of each month as the regular pay-days for paying wages to its employes. Said sum of $24.41 was the wages due for two weeks labor prior to December 10, 1901. On December 11 appellee demanded said sum of appellant, which demand was refused, and the same is now due and unpaid. On December 25, 1901, appellant was indebted to appellee $16.66 for wages. Because December 25 was a holiday appellant selected December 24 as pay-day, and the sum of $16.66 was for wages for two weeks labor prior to December 25. On December 24, 1901, appellee demanded payment of appellant of such sum, which it refused, and such sum is due and unpaid. On January 10, 1902, appellant became indebted to appellee in the sum of $17.92 for wages due for two weeks labor prior to that date. On January 13 appellee demanded payment of said sum, which demand appellant refused, and the same is due and unpaid. The labor was performed by appellee for appellant in Vigo county, Indiana, and the wages became due in said county. On February 21, 1902, appellee commenced this action for the recovery of such sums and penalties and he employed an attorney, who has rendered services of the value of $50.

As a conclusion of law from the facts so found the court stated that appellee is entitled to recover in the sum of $58.99 for his labor, and the further sum of $117.98 as a penalty thereon, and the sum of $50 as his attorney's fees, to the total amount of $226.97.  To this conclusion of law the appellant excepted.  Over its motion for a new trial judgment was rendered for the above amount in favor of appellee.

Counsel for appellant concede that the amount of $58.99, which the court found was due to appellee, is correct.  In their brief they say: "There is but one question 1. that we desire to present, which is, can appellee recover the penalty, damages and attorneys' fees provided by §7057 Burns 1901, Acts 1885, p. 36, §2?"  They further argue that if this action is founded on §§7065, 7068, *supra,* which we have hereinbefore set out, then they contend that it cannot be maintained for the reason that all the laws fixing the time of payment of wages due to laborers are in conflict with the Constitution of this State. It is contended that the invalidity of the provisions of the act of 1887 herein involved is settled by the decision of this court in *Republic Iron & Steel Co.* v. *State* (1903), 160 Ind. 379, 62 L. R. A. 136.  The argument is further advanced that the act of 1887, providing for semimonthly payment of wages by the corporations, associations, etc., therein mentioned, is a violation of section twenty-three of our bill of rights (Const., Art. 1, §23), which declares that "the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The case at bar cannot, as insisted by counsel for appellant, be ruled by the decision in *Republic Iron & Steel Co.* v. *State, supra.*  The statute in controversy in this latter case and the one herein involved are materially different. The distinction between the two acts is palpable.  The invalidity of the statute involved in *Republic Iron & Steel*

*Co.* v. *State, supra,* was, by this court, attributed to the fact that the act deprived both the employer and employe in all lines of labor of the right to contract for employment, except upon the condition that the wages earned by the employe should be paid weekly. The right of the legislature reasonably, or to a limited extent, to regulate the payment of wages, as is done under the statute in the case at bar, was not in that appeal denied by the court.

It will be observed that the act of 1887 does not profess to restrict or abridge the right of contract, except as against its express requirement that the amount due the employe for labor shall be paid in lawful money of the United States. This is the only express provision thereof which prohibits the right to contract. The constitutional validity of this provision of the act was fully sustained by this court in *Hancock* v. *Yaden* (1890), 121 Ind. 366, 6 L. R. A. 576, 16 Am. St. 396.

It will be noted that the provisions of section one of the statute include or apply to all persons, natural or artificial, engaged "in mining coal, ore or other minerals, or in quarrying stone, or engaged in manufacturing iron, steel, lumber, staves, heading barrels, brick, tile machinery, agricultural or mechanical implements, or any article of merchandise."

This classification certainly cannot be said to be narrow, unreasonable or arbitrary. The statute is general and uniform, and operates upon all persons who come within the class to which it applies. Under the circumstances it cannot in reason be asserted that the act in question, either directly or indirectly, in violation of section twenty-three of the bill of rights, grants privileges or immunities to any citizen or class of citizens which upon the same terms do not belong to all.

In *Hancock* v. *Yaden, supra,* in considering the validity of the statute, this court, by Elliott, J., said: "It neither

confers special privileges nor makes unjust discrimination. All who are members of the classes named are entitled to its benefits or subjected to its burdens. It is open to every citizen to become a member of any of the classes designated, and the privileges conferred belong on equal terms to all. *Johns* v. *State* [1881], 78 Ind. 332, 41 Am. Rep. 577; *McAunich* v. *Mississippi, etc., R. Co.* [1866], 20 Iowa 338. It denies no privilege to any one, for it leaves it free to every citizen to become a member of the classes specified, and it operates alike upon all who enter those classes. The statute operates upon both the employer and the employe. It may, it is true, in its practical operation especially benefit the wage-earner, but that is no fault; at all events, the fault is not such a grievous one as to compel the courts to strike it down. It fixes no price upon any man's labor; it leaves the parties to do that, but it does require them to refrain from contracting before the relation of employer and employe begins for payment in anything except the lawful money of the United States. It does not preclude parties from making an accord and satisfaction after wages have been earned and services rendered."

Under the provisions of section 1 of this statute the employers therein mentioned are required to pay each of their employes the amount due him for labor at least

2. semimonthly. This requirement to pay at the time prescribed by the statute only becomes mandatory upon the employer on the demand of the employe to whom the wages are due and owing. His right under the law to demand semimonthly the amount of wages then due him is a matter wholly optional with him. It is a right which he may exercise or not as he chooses. In no manner does the statute require him to exercise this right against his own free volition. The laws enacted by the legislatures of several of our sister states, requiring a certain class of employers of laborers to pay them at stated times and pro-

hibiting the payment in anything other than lawful money, have been assailed in the courts as unconstitutional with varying success. In the following cases such legislation has been upheld. *Shaffer* v. *Union Mining Co.* (1880), 55 Md. 74; *State* v. *Peel Splint Coal Co.* (1892), 36 W. Va. 802, 15 S. E. 1000, 17 L. R. A. 385; *Opinion of the Justices* (1896), 166 Mass. 589, 44 N. E. 625, 34 L. R. A. 58; *Commonwealth* v. *Hillside Coal Co.* (1900), 109 Ky. 47, 58 S. W. 441; *Commonwealth* v. *Reinecke Coal Mining Co.* (1904), 117 Ky. 885, 79 S. W. 287; *Skinner* v. *Garnett Gold Mining Co.* (1899), 96 Fed. 735; *St. Louis, etc., R. Co.* v. *Paul* (1897), 64 Ark. 83, 40 S. W. 705, 37 L. R. A. 504, 62 Am. St. 154, and authorities cited; *Leep* v. *St. Louis, etc., R. Co.* (1894), 58 Ark. 407, 25 S. W. 75, 41 Am. St. 109, 23 L. R. A. 264; *Avent, etc., Coal Co.* v. *Commonwealth* (1894), 96 Ky. 218, 28 S. W. 502, 28 L. R. A. 273.

Appellant especially assails the validity of section four of the act in question, for the reason that it provides for a penalty, or in other words, for the recovery of exemplary damages and a reasonable attorney's fee in 3. a civil action instituted by the employe to recover his wages which are due and unpaid. It is contended that the legislature has no power to authorize an assessment of a penalty and attorney's fees in cases of this character. In *Republic Iron & Steel Co.* v. *State, supra,* this power on the part of the legislature was expressly recognized. The court in that case said: "No act of the legislature can be made effective without some reasonable provision for its enforcement, and the assessment of a penalty for noncompliance has long been recognized by the General Assembly and the courts of this State as an efficient and reasonable means of securing obedience." It will be seen that under the provisions of section four, the employer who, on a demand upon the part of the employe, has for ten days

thereafter failed to pay the wages due such employe, is declared to be liable in a civil action to the employe for the amount of wages due him, together with $1 for each day succeeding the expiration of the ten-day limit, and for a reasonable attorney's fee. The amount of damages allowed to be assessed, however, can in no event exceed double the amount of the wages due the employe. The statute in this respect is reasonable and the amount of the exemplary damages assessed can neither be said to be excessive nor oppressive.

It is manifest that if the delay in paying after the expiration of the ten days allowed is short, then, consequently, the damages to be assessed will be small. The employer is in a position to prevent the assessment of these damages by either paying or tendering the amount actually due the employe before the expiration of the prescribed limit. The essential purpose of the legislature, under the circumstances, in providing for the assessment of these damages, was to enforce the performance of the duty enjoined upon the employer to pay his employe the amount of his earnings, or wages, within ten days after demand is made for the payment thereof. According to the statute the additional amount of damages authorized to be assessed over and above the actual amount of wages due is regulated, or measured, at the rate of $1 for each day which the employer allows his default in payment to continue beyond the prescribed limit. The power of the legislature, under the circumstances, as mentioned in the statute, to allow damages of the character and nature of those in question, is fully sustained by the decisions of the higher courts. See *Missouri Pac. R. Co.* v. *Humes* (1885), 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463; *Leep* v. *St. Louis, etc., R. Co., supra; St. Louis, etc., R. Co.* v. *Paul, supra; Minneapolis, etc., R. Co.* v. *Beckwith* (1889), 129 U. S. 26, 9 Sup. Ct. 207, 32 L. Ed. 585; *Day* v. *Woodworth* (1851), 13 How. *363, 14 L. Ed. 181; *Huntington* v. *Attrill*

(1892), 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; *Merchants Bank* v. *Bliss* (1866), 35 N. Y. 412; *Terre Haute, etc., R. Co.* v. *Salmon* (1903), 161 Ind. 131, and authorities there cited; *American, etc., Co.* v. *Ellis* (1901), 156 Ind. 212.

The validity of the provision of section four, authorizing the assessment of a reasonable attorney's fee as a part of the damages in the action instituted by the employe

4.  to recover the wages due him, is fully sustained by the following decisions: *Duckwall* v. *Jones* (1901), 156 Ind. 682; *Dowell* v. *Talbot Paving Co.* (1894), 138 Ind. 675; *Terre Haute, etc., R. Co.* v. *Salmon, supra; Forrest* v. *Corey* (1902), 29 Ind. App. 159; *Pittsburgh, etc., R. Co.* v. *Taber* (1907), (Ind. Sup.), 77 N. E. 741.

We find no error, and the judgment of the lower court is therefore affirmed.