Carroll, }
Dec., 1894. }

## HORNE v. HANSON & a.

When a mortgagor has so commingled the mortgaged property with goods of like quality and value belonging to a third person that identification and separation are impossible, the mortgagee may take under foreclosure proceedings his aliquot part from the entire quantity in the possession of a subsequent purchaser of both parcels.

TRESPASS, *quare clausum*. Facts found by the court. In the summer of 1892, Thomas Horne occupied a farm owned by one French; and by the terms of occupancy, was to cut and put into the barn the hay growing on the farm, which was to be the property of French. Horne owned an adjoining farm, known as the Batchelder place. The hay on both farms was cut by Horne and put into the barn on the French place, the good hay from both farms being commingled in bay No. 1. The hay in this bay was of uniform value throughout, and there was nothing in its appearance to indicate from which farm it had been cut.

Of the nine tons of hay in bay No. 1, between three and four tons came from the Batchelder place.

July 15, 1892, Horne mortgaged to the defendant, Hanson, all the hay standing and growing on the Batchelder place, to be cut and put into the barn without expense to Hanson. The mortgage was properly recorded within ten days. October 1, 1892, French sold and conveyed his farm and all hay cut on the place to the plaintiff; and about the same date, Horne conveyed to the plaintiff (his son's wife) all the hay cut from the Batchelder place and other personal property, in consideration of his support. The plaintiff did not then know of the Hanson mortgage. Shortly afterward, the plaintiff moved to the French place and took possession of the hay cut from both farms.

The defendant, Hoyt, was sheriff of Carroll county, and assisted Hanson in foreclosing his mortgage. Before the foreclosure, the plaintiff and her husband declined to point out to the defendants the hay cut from the Batchelder place, and said that Thomas Horne had no hay in the barn. December 10, 1892, three and a half tons of hay were sold under foreclosure proceedings, and bid off for Hanson in satisfaction of his mortgage debt and costs of foreclosure. When the defendants came to draw away the hay, the plaintiff and her husband fastened up the barn, and forbade the defendants to enter or take the hay. Hoyt broke open the door of the barn, doing little or no damage, removed the plaintiff's straw and beans from bay No. 1 without injuring them, and took away three tons of hay from this bay. Of the hay so taken, all but a small portion came from the French farm. The court found a verdict for the defendants, and the plaintiff excepted.

*James L. Wilson*, for the plaintiff.

*Paul Wentworth*, for the defendants.

Smith, J. Hanson had a valid mortgage, duly recorded, from Thomas Horne of the grass on the Batchelder place, which Horne agreed to cut and put into the barn in good condition, without expense to Hanson. The grass when cut and made into hay was commingled by Horne with other hay grown on the French place. He then conveyed to the plaintiff the hay thus commingled. The mortgage lien was not destroyed by the act of the mortgagor in commingling the mortgaged property with his other hay; and the plaintiff by her purchase took the hay subject to the Hanson mortgage.

The rights of parties in a case of confusion of goods may be expressed as follows: "If the goods are accidentally mingled, and they are of such character that they can be distinguished

and separated, there will be no change of property, but each is entitled to his own; if they are of such a nature that they cannot be identified and separated, as corn, oil, wine, hay, etc., then each is entitled to his aliquot part of the entire quantity." *Moore* v. *Bowman*, 47 N. H. 494, 501. As the commingling was not accidental on the part of the plaintiff's vendor, this statement of the law is sufficiently favorable to the plaintiff.

Hanson before foreclosing requested the plaintiff to show him the hay cut from the Batchelder place. She declined, denying that Thomas Horne had any hay in the barn. Hanson thereupon, in the exercise of his legal right of foreclosure, sold enough of the hay in one of the bays to satisfy his mortgage debt and expenses of foreclosure. In the bay there were between three and four tons cut on the Batchelder place. Hanson sold three and one half tons from that bay, practically the same quantity that was cut, and carried away three tons. The hay in the bay was all of the same quality. As he took no more than his aliquot part (in fact one half ton less), it follows that the plaintiff has no legal grievance against him by reason of the foreclosure proceedings.

*Exceptions overruled.*

WALLACE, J., did not sit: the others concurred.