BANK OF INDIANOLA *et al. v.* MILLER, STATE REVENUE AGENT.[*]

(In Banc.  May 9, 1927.  Suggestion of Error Overruled June 6, 1927.)

[112 So. 877.  No. 26112.]

1. DEPOSITARIES.  *Bank having on deposit tax collections must pay interest on total daily balance, including taxes collected for levee and drainage districts (Laws 1922, chapter 174, section 1).*

   Under Laws 1922, chapter 174, requiring banks having on deposit tax collections to pay interest thereon, interest is collectible on entire daily balance, including taxes collected for levee and drainage districts, since section 1 of the act does not limit requirement for interest to subdivisions of county only.

2. DEPOSITARIES.  *Bank, having on deposit tax collections, cannot esape penalty for failure to account for interest by commingling funds so that tax collections cannot be determined (Laws 1922, chapter 174).*

   Banks, having on deposit tax collections, cannot escape penalty under Laws 1922, chapter 174, for failure to properly account for interest required by the act because of commingling of funds so that proper officers of state cannot determine from accounts the exact amount of tax collections, since in case of commingling of funds in such manner bank is liable for interest on entire account.

3. Statutes. *Law requiring banks to pay interest on tax collections held not in violation of constitutional provision forbidding local or special laws regulating interest (Laws 1922, chapter 174; Constitution 1890, section 90 [d]; Hemingway's Code, sections 3578, 3579).*

Laws 1922, chapter 174, requiring banks having on deposit any of tax collections to pay interest thereon, *held* not in violation of Constitution 1890, section 90 (d) forbidding local or special laws regulating rate of interest on money, in view of Hemingway's Code, sections 3578, 3579, defining banks, and requiring those engaged in banking business to incorporate, and particularly since such constitutional provision was not intended to prohibit state from imposing limitations or conditions on right of banks or other institutions to become depositaries of public funds.

4. Constitutional Law. *Depositaries. Law requiring banks to pay interest on tax collections held not in violation of constitutional provisions relative to due process (Laws 1922, chapter 174; Constitution, Mississippi 1890, section 24; Constitution, U. S. Amendment 14).*

Laws 1922, chapter 174, requiring banks having on deposit tax collections to pay interest thereon *held* not in violation of Constitution, Mississippi 1890, section 24, or Constitution, U. S. Amendment 14, relative to due process, in that the penalty imposed by statute for nonpayment of interest is out of proportion to debt created by statute, since such liability was not arbitrarily imposed on banks but was voluntarily assumed by their acceptance of deposits of public funds.

5. Constitutional Law. *Depositaries. Law requiring banks to pay interest on tax collections held not in violation of Federal Constitution guaranteeing equal protection of law (Laws 1922, chapter 174; Constitution U. S. Amendment 14).*

Laws 1922, chapter 174, requiring banks having on deposit tax collections to pay interest thereon, *held* not in violation of Constitution U. S., Amendment 14, as denying equal protection of the law because of imposing a penalty on banks for failure to pay a debt due county which is not imposed on any other class of debtors, since liability for interest and penalty under the act was voluntarily assumed by banks by accepting deposits.

6. Depositaries. *Law requiring banks having tax collections on deposit to pay interest held not impliedly repealed (Laws 1922, chapter 174; Laws 1924, chapter 328).*

Laws 1922, chapter 174, requiring banks having on deposit any of tax collections to pay interest thereon *held* not impliedly re-

pealed by Laws 1924, chapter 328, making officers and custodians of public funds liable for fees or commissions for collection of money or property improperly withheld, since such chapter does not in any way purport to deal with subject of penalties imposed for defaults in connection with public revenues.

ANDERSON, J., dissenting.

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 1177, n. 20; p. 1247, n. 13; Depositaries, 18CJ, p. 593, n. 19; Statutes, 36Cyc, p. 998, n. 12; As to liability of bank for interest on or profits derived from public funds deposited with it, see annotation in L. R. A. 1918E, 678; 22 R. C. L. 225; 3 R. C. L. Supp. 1244.

APPEAL from chancery court of Sunflower county. HON. E. N. THOMAS, Chancellor.

Separate suits by W. J. Miller, state revenue agent, against the Bank of Indianola and another, which were consolidated for trial. Decrees for complainant, and defendants appeal. Affirmed.

*Chapman, Moody & Johnson*, for appellants.

I.  Even if the appellants be charged with interest on the daily balances, when by the account, there should be excluded interest on so much of said balances as represented taxes collected for the levee and drainage districts.  This statute, which imposes interest, creates an obligation which did not exist at common law, and, for that reason, must be strictly construed: 33 C. J. 187, sec. 27; *Warren County* v. *Klein*, 51 Miss. 807; 36 Cyc. 1180-1188; 36 Cyc. 1119; *Ellis* v. *Murray*, 28 Miss. 129, 142.

The levee district is a subdivision of the state, but it is not a subdivision of the county. If the words "subdivisions thereof" do not include a subdivision of the state, then it follows that taxes collected for the levee district are not included within the terms of the statute. A drainage district is not a subdivision of a county. *Robertson* v. *Thomas*, 79 So. 289. Therefore the decree, if otherwise correct, should be reversed so that there

should be deducted from the amount decreed, as interest and damages on levee and drainage district taxes.

II.    If liable for interest on the daily balances, shown by the accounts, which daily balances are proven to be not daily balances of tax collections, the penalty of five per cent per month, or fraction thereof, does not attach. The statute, by its terms, prescribes a penalty for a failure to pay, when due, *interest on tax collections* computed at two per cent *per annum* on daily balances. The daily balances of tax collections, as a fact, have not been, and cannot be, established either by the complainant or defendants.

The law, as stated in the former opinion of this court, is that the defendants must so keep their accounts as to show the daily balances of tax collections; and, failing to do so, they must pay, *as damages,* interest on the daily balances shown by the account, whether tax collections or not. That is, the law in such a case awards *damages* against the defendants for failing to keep accounts that show the daily balances of tax collections.

The penalty, imposed by the statute, follows the establishment of the *fact.* From the inability to prove the fact owing to the acts of omission of the defendants, damages are awarded against them to the extent of interest computed at two per cent *per annum* on the daily balances shown by the account. The law does not presume, from a lack of evidence, that the fact exists, but merely *awards damages* for the nonproduction of the evidence. 22 C. J. 109, sec. 49. In other words, accepting what the opinion states the law to be, which, of course, we do, that law, not the statute *per se,* awards *damages* computed at two per cent *per annum,* etc., for the failure to keep the accounts.

*Damages* are awarded for the breach of a duty, that is the failure to keep the account. *Kieppner* v. *Lemon,* 47 Atl. 353; *Stone* v. *Marshall Oil Co.,* 57 Atl. 183. The penalty imposed by the statute, attaches for a failure to

pay the *interest* due, not damages awarded for the breach of a duty. If no *interest* due is established, no penalty follows. Therefore, in awarding the penalty on the damages, the decree in that respect, at least, is erroneous. Therefore, the decree, if otherwise correct, it should be reversed and the damages, decreed against both defendants, remitted.

III. The act is violative of section 90 (d) of the Constitution of 1890. 25 R. C. L. 820, Note; 25 R. C. L. 824, sec. 73; 36 Cyc. 1007. If the law is special, not general, the fact that it relates to public funds will not save it. That the law is special is obvious. The test, under section 90 is whether the subject-matter could be provided for under a general law. In other words whether the statute which regulates the interest to be paid for the use of funds mentioned in it could be made applicable to all persons. If a general law would fit the case such a law must be enacted. A law is ascertained to be special not by what it includes but by what it excludes. For good statement of the rule see *Budd* v. *Hancock,* 48 Atl. (N. J.) 1024.

IV. The statute, as the basis of this suit, violates sections 12 and 24 of the Constitution of 1890, and that portion of the Fourteenth Amendment which provides that no state shall deprive any person of his property without due process of law. *Ex parte Young,* 14 Am. & Eng. Ann. Cases, pages 764-70-1.

Whether the legislature has the authority to enact a law, imposing interest on daily balances of tax collections, is questioned. If it has, the amount of the interest claimed is denied. A denial to the appellants of access to the courts to have both or either of these questions adjudicated, would confessedly be unconstitutional. Likewise if the penalty imposed, is so out of proportion to the amount involved, as to have that effect. If the amount of interest claimed, and established, be one thousand

dollars, a penalty of five per cent per month is imposed when the interest became due, not when it was adjudicated to be due, and, from the former date, a penalty of five per cent per month, or fraction thereof, is imposed. A year, at least, from the date of a chancery suit is filed to a decision in this court, elapses. Therefore, if the appellants are wrong, they pay a penalty of six hundred dollars for resorting to the courts to have adjudicated whether they owe one thousand dollars.

If the penalty that is imposed attaches, in such a manner as to be so out of proportion to the duty to be performed—that is the debt to be paid—that it deters access to the courts, in order to have the question of the duty adjudicated, it is void. The statute, under consideration, does not create the debt. When facts, in conformity with the rule laid down in the statute, are established the debt results. The enormity of the penalty, imposed by the statute, must be determined in relation to the amount involved, or the debt claimed to be due. *Gulf, etc., R. R. Co.* v. *Ellis,* 41 L. Ed. 666-667-8. The penalty imposed by the statute, is so enormous as to deny access to the courts, and, as a consequence, property is taken without due process of law.

V. The statute, under consideration, is void, in that it denies to the appellants the equal protection of the law, as provided by the Fourteenth Amendment to the Constitution of the United States. Chapter 174, Acts of 1922. This is a penalty imposed on banks *only,* for a failure to pay a debt due by them to the county, and is imposed on no other class of individuals or corporations. All debtors, owing debts to counties, as a class, are not so punished. Therefore, we insist that the statute is unconstitutional, as such banks are denied the equal protection of the laws, in that as *debtors* in general and in particular, and as *litigants* they are penalized and others are not. *Gulf, etc., Ry.* v. *Ellis,* 41 L. Ed. 666, 667-8; *Sorenson* v. *Webb,* 71 So. 273.

*J. H. Sumrall,* for appellee, and *Wilson & Henley, amici curiae.*

I.  Subsection D, of section 90, is not violated by the provisions of the statute in question.  In the first place the act in question does not, in any sense, deal with the rate of interest on money, in the sense contemplated by the section of the Constitution referred to.  In the next place the money referred to in the section of the Constitution in question has to do with money in the sense that the lawful rate of interest fixed by statute to be contracted for by all persons must be general in its nature, and uniform in its application throughout the state. *Halsell* v. *Union Insurance Company,* 105 Miss. 268.

The inhibition of the statute relied on by appellants would not be applicable to the case at bar for two reasons.  In the first place, if the banks, as contemplated by the statute under consideration, may be segregated because of their methods of doing business with tax collections (and I think they can), then the law would not be unconstitutional, even though it should be admitted that this was a special law.  But while the charge made against the banks, for the use of public moneys handled by them, is called interest, it is not the kind of interest contemplated by the Constitution, in the sense that it amounts to a fixing of a local rate of interest; as was the case in the *Halsell case, supra.*

It is necessary to take into consideration what the term "bank" implies.  Section 3578, Hemingway's Code; *State* v. *Kelsey,* 44 N. J. Law 1.  The history of the legislation leading up to the enactment of chapter 174, of the Laws of 1922, clearly demonstrate the object of the legislature in enacting said statute.  See chapter 315, Laws of 1920; chapter 174, Laws of 1922.

It is manifest that the term "any bank" as used in said law, imposing a condition on handling of public funds, is a broad and comprehensive term, and applies equally to any person, firm or corporation in the state who would

have occasion to handle such deposits, since any lawful handling of such deposits would constitute such person, firm or corporation a "bank" under the laws of this state.

II.  The statute attacked does not violate sections 12 and 24 of the state Constitution.  The rule quoted by counsel for appellants from *Ex parte Young,* 14 American and English Annotated Cases, 764 and 701, is a complete answer to their own contention, that the appellants would be deprived of their property without due process of law, by the enforcement of the statute.

III.  The statute is not violative of the Fourteenth Amendment to the Constitution of the United States.  12 C. J., section 1032, page 1248; *Maryland Fidelity & Deposit Company* v. *Wilkinson County,* 109 Miss. 879; 6 R. C. L., sections 367 and 369.

Applying the rule announced, it is manifestly within the power of the legislature to make such classification as it may see fit, in providing for the imposition of the interest and penalty provided for in the law in question, as applying to that class of individuals or corporations which experience indicates would be likely to receive the deposits of tax collectors.  Therefore, if it should be contended that the limitation of such law in its application applies to "banks" only, then such limitation, in view of the laws of the state defining what constitutes "banks," would be such a reasonable limitation placed upon a reasonable classification as not to come within the inhibition of the Constitution.  See, also, in 6 R. C. L., section 370, at page 375.

Argued orally by *C. C. Moody* and *W. S. Henley,* for appellant, and *J. H. Sumrall,* for appellee.

COOK, J., delivered the opinion of the court.

The appellee, W. J. Miller, state revenue agent, filed separate bills of complaint against the Bank of Indianola

and the Bank of Ruleville, seeking to recover from these banks interest on deposits of tax collections of the county tax collector, at the rate of two per cent *per annum* computed on daily balances, and also the penalty of five per cent per month, or fraction thereof, for the time elapsing between the date when such interest became due and the time of payment thereof, as provided by chapter 174, Laws of 1922.

At the first trial in the court below the two causes were heard together and final decrees were entered dismissing the bills of complaint, and, from the decree dismissing the bills, the revenue agent prosecuted an appeal, and, on the hearing of the appeal, the decree was reversed and the cause remanded; the court holding that—"Under chapter 174, Laws of 1922, a bank which knowingly receives tax collection funds from a sheriff for deposit must keep an account of such funds and the daily balances thereon. If it mingles other funds with such tax collections so that it is unable to separate the same, it will be held liable for the two per cent on daily balances on the whole fund." 142 Miss. 799, 107 So. 548.

After the cause had been remanded, the appellants, defendants below, by leave of the court, withdrew the answers formerly filed, and filed in lieu thereof amended answers, specifically attacking the constitutionality of chapter 174, Laws of 1922, and, upon the second hearing of the cause in the court below, decrees were entered in favor of the complainant against each of the defendants for the amount of interest accrued on the sheriff's account in such bank during the period covered by the demands in the bills of complaint, and for the five per cent per month penalty accrued from the date upon which payment of such interest was shown to be due to the date of said decree, and from these decrees appeals were prosecuted by the defendant banks.

On this appeal the contentions of appellants, as stated by counsel, are:

"First. That, even if the appellants be charged with interest on the daily balances, shown by the account, there should be excluded interest on so much of said balances as represent taxes collected for the levee and drainage districts.

"Second. If liable for interest on the daily balances shown by the accounts, which daily balances are proven to be not daily balances of tax collections, the penalty of five per cent per month or fraction thereof does not attach.

"Third. The statute, as the sole basis of the suit, is unconstitutional and void."

Section 1 of chapter 174, Laws of 1922, provides, in part, that—"Any bank in this state that now has or that may hereafter have on deposit any of the tax collections of the various tax collectors in the state prior to the payment of such collections into the various funds of the state and county and subdivisions thereof, shall be required to pay interest on such tax collections," etc.

And the first contention of appellants is that the words "subdivisions thereof," as used in this statute, refer to subdivisions of the county and not to subdivisions of the state, and consequently, since levee and drainage districts are subdivisions of the state and not of the county, no interest is imposed by this statute upon the levee and drainage district taxes on deposit in the banks of the state. We do not think the language of this statute can be so limited. While, "it is generally true that a statute which treats of things or persons of an inferior degree, cannot, by any general words be extended to those of a superior degree" (*Ellis* v. *Murray,* 28 Miss. 129), the application of this rule to the language of this statute does not so limit the meaning of the words "subdivisions thereof." The words "state and county and subdivisions thereof" clearly mean subdivisions of the state as well as those of the county, and the interest is imposed upon tax collections belonging to levee and drainage dis-

tricts as well as those belonging to subdivisions of the county.

The second contention of appellants, stated more in detail, is that, under the former opinion of the court in this cause, where it is impossible, on account of the commingling of funds in the sheriff's account, to show the exact amount of tax collections on deposit in such account, the two per cent *per annum* computed on the daily balances of the entire account is awarded as damages for the failure to properly keep and separate the accounts, and not as interest on established tax collections, and consequently, since the statute imposes the penalty for failure to pay interest due on tax collections, and not on damages awarded, no penalty follows in this case for the reason that, on account of the mingling of funds, the actual amount of tax collections cannot be shown.

In the former opinion in this case (142 Miss. 799, 107 So. 548), the court said that—"The banks, of course, did not have to receive the funds under the statute, but, when they received public funds, knowing them to be public funds, they were under the duty to ascertain what part of such funds were tax collections, and to keep them separate from other funds of the sheriff's account. They cannot escape the consequences of the statute by commingling the funds in such way, or keep such account, as will not disclose to the proper officer of the state such funds, and escape liability. They are under the duty to show, when called on to account, the amount of money received, and the true daily balances of such account, and, if they commingle the funds in such manner that this cannot be ascertained from their books they must be able to point out and make a correct accounting, or, in default, they would be held liable for interest on the entire account."

The five per cent per month penalty is imposed for the failure to promptly account for the interest due the respective taxing districts, and, by commingling the funds so that the proper officers of the state cannot determine

147 Miss.—45.

from the accounts the exact amount of tax collections, the banks can no more escape this penalty than they can the compensation allowed by law for the use of this money, whether it be denominated interest or damages.

The appellants next contend that chapter 174, Laws of 1922, the basis of this suit, violates sections 90(d) and 24 of the state Constitution of 1890, and also the Fourteenth Amendment of the Constitution of the United States, in that it deprives them of their property without due process of law, and denies to them the equal protection of the laws.

Section 90, Constitution of 1890, provides that, "the legislature shall not pass local, private, or special laws in any of the following enumerated cases, but such matters shall be provided for only by general laws, viz.: . . . (d) Regulating the rate of interest on money" —and the appellants contend that chapter 174, Laws of 1922, is a special law, for the reason that it applies only to banks, and not to individuals, trust companies, corporations, manufacturing concerns, etc., that might have tax collections on deposit.

Section 3578, Hemingway's Code, which defines what shall constitute a bank, provides that "any corporation (except national banks and postal savings banks) having a place of business within this state, where credits are opened by the deposit or collection of money or currency or negotiable paper subject to be paid or remitted upon draft, receipt, check or order, or sale of drafts or exchange drawn on local or foreign banks, shall be regarded as a bank or banker, and as doing a banking business under the provisions of this act," while section 3579, Hemingway's Code, requires that every person or firm engaged in the banking business in this state, shall incorporate under the laws of the state. It is hardly conceivable that the tax collectors of the state would ever deposit public funds with private individuals, or corporations that do not come under this very broad definition of a bank or banker, or that every character of in-

stitution which receives deposits of public funds would not become subject to the operation of this act, but, if it be conceded that this law does not rest upon any proper basis of classification and is special, we do not think it is a regulation of the rate of interest in the sense contemplated by paragraph (d), section 90 of the Constitution. The "rate of interest on money" referred to in this section was intended to deal with this subject in the sense that the lawful rate of interest fixed by statute to be contracted for by all persons must be general in its nature, and uniform in its application throughout the state, but it was not intended to prohibit the state from imposing limitations or conditions upon the right of banks or other institutions to become depositories of public funds, for it has been held by this court that—"The state can decline absolutely to permit banks to become depositories of money belonging to the public and it necessarily follows that it can permit them to do so upon such conditions as it may see fit to impose." *Fidelity & Deposit Co.* v. *Wilkinson County,* 109 Miss. 879, 69 So. 865.

The appellants next contend that this act violates section 24 of the Constitution of 1890, which provides that "all courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay;" and also the provision of the Fourteenth Amendment of the Constitution of the United States that no person shall be deprived of his property without due process of law. The exact contention of counsel in this regard is that the penalty imposed by this statute for the nonpayment of the interest is so out of proportion to the debt created by the statute as to deter the debtor from resorting to the courts to have his liability and the amount thereof established, and consequently the effect is that the courts are not open to him, and his property, the debt he pays, is taken without due process of law.

For an announcement of the doctrine upon which they rely, counsel for appellants quote from the case of *Ex parte Young*, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, the following language:

"Now, to impose upon a party interested the burden of obtaining a judicial decision of such a question (no prior hearing having ever been given) only upon the condition that, if unsuccessful, he must suffer imprisonment and pay fines, as provided in these acts, is, in effect, to close up all approaches to the courts, and thus prevent any hearing upon the question whether the rates as provided by the acts are not too low, and therefore invalid. The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation and over which the jurisdiction of the legislature is complete in any event."

The duty or liability which this act imposes upon banks is to pay quarterly a fixed rate of interest on the daily balances of tax collections on deposit in such banks, and no penalty accrues until ten days after this interest is due and payable, and the determination of the amount of interest due is certainly not a fact, the existence of which "can be determined only after investigation of a very complicated and technical character." The determination of this fact involves simply a calculation from the books of the bank. This law imposes interest on the daily balances of such accounts as shown by the books of the bank, and the facts necessary to determine the amount of interest due are peculiarly within the knowledge and possession of the banks, and are established by their own records if such records are accurately kept. If, however, any question of fact, or controversy as to the amount of interest due should arise or if a bank desired to contest the validity of the statute or otherwise chal-

lenge its liability thereunder, it could avoid the penalty that might be incurred by reason of delay incident to the litigation by paying, under protest, the exact amount of interest shown by its books to be due, and recover such payment if successful in the litigation. The right of the legislature to impose upon banks the duty of paying this interest is clear. This liability was not arbitrarily imposed upon the appellants, but was voluntarily assumed by them by accepting deposits of these public funds, and we are of the opinion that the penalty imposed for a default in the payment of the interest when due does not, in effect, deny to appellants access to the courts or deprive them of their property without due process of law.

Finally, the appellants contend that this statute is void for the reason that it denies to appellants the equal protection of the law, as provided by the Fourteenth Amendment to the Constitution of the United States, the contention of the appellants in this regard being that the interest imposed by the statute is a mere debt due the county, and it imposes a penalty on banks for a failure to pay a debt due by them to the county which is not imposed on any other class of debtors to counties.

Upon this point we think this case is ruled by the case of *Fidelity & Deposit Co.* v. *Wilkinson County,* 109 Miss. 879, 69 So. 865, in which was involved the constitutionality of section 10 of the County Depository Law (chapter 194, Laws of 1912; section 4247, Hemingway's Code), and in which it was held that that section did not violate the Fourteenth Amendment. That section of the County Depository Law authorizes boards of supervisors to employ counsel to enforce prompt collections from defaulting depositories, and makes such depositories liable for all costs of collection, including counsel fees, and also imposes a cumulative penalty of one per cent per month for any delay in paying over any county funds when lawfully demanded, and also imposes liability upon the surety of such depository for such expense and penalty, and, in disposing of the contention that this section vio-

lates the provisions of the Fourteenth Amendment the court said that—"Liability for this penalty and counsel fee is one of the conditions upon which these appellants were permitted to become sureties for the discharge by the Citizens' Bank of Wilkinson county of its obligation as depository for the county of Wilkinson; consequently, liability therefor was not arbitrarily imposed upon appellants, but was voluntarily assumed by them. Since the state can decline absolutely to permit banks to become depositories of money belonging to the public, it necessarily follows that it can permit them to do so upon such conditions as it may see fit to impose."

If, as said by the court in the foregoing quotation, "the state can decline absolutely to permit banks to become depositories of money belonging to the public," and "can permit them to do so upon such conditions as it may see fit to impose," it may likewise prohibit the deposit of public funds in banks which have not qualified as depositories, and may permit them to receive such deposits upon such conditions as it may see fit to impose. The liability for this interest and penalty was not arbitrarily imposed upon the appellants, but was voluntarily assumed by them by accepting deposits of these public funds, and we do not think the imposition of this penalty for failure to pay this interest when due denies to them the equal protection of the laws as guaranteed by the Fourteenth Amendment.

Counsel representing other banks, as *amici curiae* have filed a brief covering the points already discussed, and making the further contention that chapter 174, Laws of 1922, was impliedly repealed by chapter 328 of the Laws of 1924; this contention being based upon the well-established doctrine that, where the legislature in a later act covers the entire scheme dealt with in a former act, the former act will be treated as having been repealed by the later act, although there is some difference in the provisions of the two statutes.

Chapter 328, Laws of 1924, is entitled "An act to preserve public funds, and making all officers and other custodians of public funds liable for any fees or commissions payable to the attorney-general or revenue agent for the collection of any money or property improperly withheld by such custodians," and sections 1 and 2 of the act provide as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that any officer, state, county, municipal or district, or any other custodian of public funds or property, who shall improperly withhold same from the state or county treasurer or other authority whose duty it is to receive same, or who shall fail to turn property over to the proper custodian, or who shall in any wise be in default as to any money or property held by him as a public official in this state, or in any other capacity as custodian of such funds or property, shall be liable on his bond for all cost of collection or recovery of money or property, including in such costs the commissions, if any, of the revenue agent or the attorney-general, and all other costs connected therewith, including interest on funds improperly withheld, for such time as such funds have been withheld, and reasonable rental and damages where property belonging to the public is so withheld.

"Sec. 2. It is the purpose of this act to preserve in its entirety the public funds and property in this state, and it shall be so construed that the commissions, if any, and fees of the attorney-general and the revenue agent, and all other costs of collection must be borne by such derelict official or custodian."

The purpose and proper construction of section 1 of this act is manifest from the language thereof, even if the purpose and proper limitations and construction thereof were not expressly set forth in section 2 of the act. The sole purpose of the act is to render defaulting public officials and other custodians of public funds, and their bondsmen, liable for the costs, and statutory fees al-

lowed to certain officials, for collecting any funds, or recovering any property, improperly withheld from the proper treasury or custodian. We have many statutes imposing penalties for defaults in connection with the public revenues and for failure to perform public duties, and these penalties are entirely separate from, and have no proper connection with, the subject of costs incurred or fees allowed for collecting public funds, and chapter 328, Laws of 1924, does not in any way purport to deal with the subject of penalties imposed by these numerous statutes for defaults in connection with the public revenues, and, consequently, it does not by implication repeal chapter 174, Laws of 1922.

The decree of the court below will therefore be affirmed.

*Affirmed.*

ANDERSON, J. (dissenting).

Section 90 of our Constitution prohibits, among other things, the legislature from passing special laws regulating the rate of interest on money. It was held in *Loan Association* v. *McElveen,* 100 Miss. 16, 56 So. 187, that interest Laws were of general public concern; that, under this constitutional provision, special laws regulating the rate of interest on money could not be passed. In *Halsell* v. *Insurance Company,* 105 Miss. 268, 62 So. 235, 645, Ann. Cas. 1916E, 229, it was held that, although no special law could be passed regulating the rate of interest, under this constitutional provision, the legislature could make a class of building and loan associations, on account of the distinctive character of their business, and authorize them to charge a rate of interest higher than the general rate others were authorized to charge; that, under the Constitution, such a law was not a special law, regulating the rate of interest, but a general law, applying to all that came within the designated class; that therefore the classification of building and loan associations was a reasonable, and not an arbitrary, classifica-

tion. The rule established by the authorities, including the decisions of this court, is that, while it is competent for the legislature to classify, the classification, to be valid, must rest on some reasonable public policy, some substantial differences of situation and circumstances, that would naturally suggest the justice and expediency of special legislation with respect to the objects classified. Substantially the same rules govern with reference to the classification of subjects of legislation by the states in order to meet the requirements of the equal protection clause of the Fourteenth Amendment of the Federal Constitution. In my judgment, the classification of banks receiving deposits of tax collections from the county tax collectors, made by the statute involved, is arbitrary and unreasonable. *R. R. Company* v. *Ellis,* 165 U. S. 150, 17 S. Ct. 255, 41 L. Ed. 666; *Rodge* v. *Kelly,* 88 Miss. 209, 40 So. 552, 11 L. R. A. (N. S.) 635, 117 Am. St. Rep. 733; *Ins. Co.* v. *City of Philadelphia,* 262 Pa. 439, 105 A. 630, 2 A. L. R. 1573; *Bayha* v. *Carter,* 7 Tex. Civ. App. 1, 26 S. W. 137; *R. R. Co.* v. *Head,* 26 Ariz. 259, 224 P. 1057. In the Ellis case, the supreme court of the United States said:

"That [the classification] must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . . It is, ·of course, proper that every debtor should pay his debts, and there might be no impropriety in giving to every successful suitor attorney's fees. Such a provision would bear a reasonable relation to the delinquency of the debtor, and would certainly create no ·inequality of right or protection. But, before a distinction can be made between debtors, and one be punished for a failure to pay his debts, while another is permitted to become in like manner delinquent without any punishment, there must be some difference in the obligation to pay, some reason why the duty of payment is more imperative in the one instance than in the other.''

The case of *Insurance Company* v. *Philadelphia,* involved a statute which provided that, in all cases where private property was taken, injured, or destroyed by a municipality for public purposes, the amount of damages thereby caused should bear interest at a rate of six per cent *per annum* from the time of such taking, injury, or destruction. The Constitution of Pennsylvania provided that the legislature should not pass any local or special law fixing the rate of interest. The defense of the municipality was that the statute fixing the rate of interest was a special law in violation of that constitutional provision. The court held the statute unconstitutional; that the classification of municipalities by the statute was arbitrary, and was without any just, reasonable foundation.

The statute here involved singles out and classifies certain banks, and also singles out and classifies certain public funds. It provides that a special rate of interest, two per cent *per annum,* on daily balances, is to be charged against those banks alone receiving deposits of tax collections from county tax collectors. All banks receiving other deposits than public funds are exempt from the special rate of interest provided by the statute. All other public funds, from every other source, are left out of the class. It is a matter of common knowledge that many of the public officers of this state, including state, county, and municipal officers, having the collection and custody of public funds, deposit such funds in banks between the time of their collection, and the time of the settlements required to be made by such officers. Under the statute in question, none of these funds bear interest except tax collections by county tax collectors. The result of the enforcement of the statute will be that banks having on deposit tax collections made by county tax collectors must pay the special rate of interest, while banks having on deposit other public funds get them interest free. If there is any just reason for such a classification, I am unable to see it.

For the same reasons that the classifications made by the statute are arbitrary and insufficient under the provision of our Constitution prohibiting special legislation regulating the rate of interest, it is condemned by the equality clause of the Fourteenth Amendment of the Federal Constitution.

It seems clear to me that the penalty provided by the statute of five per cent per month imposed upon the banks which fail to pay the special rate of interest at the times fixed by the statute is so enormous as to amount to a denial to such banks of due process, in violation of section 24 of our Constitution, and the due process clause of the Fourteenth Amendment to the Federal Constitution. Section 24 of our Constitution provides, in substance, that all courts shall be open, and that every person, for any injury done himself, his lands, goods or reputation, shall have a remedy by due course of law. A penalty of five per cent per month is sixty per cent per year. Litigation going through the trial courts, and also the supreme court, usually takes something like two or three years, sometimes less, sometimes longer. The imposition of the five per cent penalty under the statute for a period of three years would amount to about double the original indebtedness. An original indebtedness of one thousand dollars would, in three years, amount to something like three thousand dollars. A statute which subjects an intending litigant to such excessive and unreasonable penalties for its violation as to intimidate him, and thereby deter him from contending for his rights in the courts, is a denial to him of due process of law. Such a statute practically closes the door of the courts to those desiring to have their rights settled in the courts. *Railroad Company* v. *Georgia,* 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405; *Van Dyke* v. *Geary* (D. C.), 218 F. 111; *Ex parte Young,* 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; *Kern* v. *Pipe Line Co.* (D. C.) 217 F. 273; *Willcox* v. *Consolidated Gas Co. of New York,* 212 U. S. 19, 29 S. Ct.

192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034; *State* v. *Crawford,* 74 Wash. 248, 133' P. 590, 46 L. R. A. (N. S.) 1039; *Coal & Coke Ry. Co.* v. *Conley,* 67 W. Va. 129, 67 S. E. 613.

The majority opinion takes the position that the appellants could have avoided the penalties by paying, under protest, the amount sued for, and then bringing suit to recover it back. Probably the penalties imposed by the statute could have been avoided in that manner, but, if that would not be a denial of due process of law to appellants, I do not see how one could be denied due process. If a person must turn over to an adverse claimant all the latter is claiming, before the former will be admitted to the courts to test his rights, can it be said that the courts are open to him? I think not. My opinion is that they would be closed to him pretty tight.

I agree with the majority opinion that chapter 328, Laws of 1924, has no application to this case, but for a different reason than that given in the majority opinion. That act is applicable only to those made custodians of public funds by law. It applies only to public officers and banks which have qualified, under the law, as depositories of public funds. Appellants, in this case, were not depositories or custodians of public funds in the sense of the statute. The relationship only of debtor and creditor existed between appellants and the public. The failure of appellants to pay the special rate of interest, two per cent *per annum,* on daily balances, was not a failure to perform a public duty on the part of appellants, but only a failure to pay a debt which they owed. The statute imposing the penalties was therefore not a statute imposing a punishment for failure to perform a public duty, but a statute imposing penalties for failure to pay a debt.